**WLR FOODS, INC., Plaintiff,**

v.

**TYSON FOODS, INC., Defendant.**

**TYSON FOODS, INC. and WLR Acquisition Corp., Counterclaimants,**

v.

**WLR FOODS, INC., et als., Counterclaim-defendants.**

**Civ. A. No. 94–012–H.**

United States District Court, W.D. Virginia, Harrisonburg Division.

Dec. 6, 1994.

---

Douglas Leigh Guynn, Wharton, Aldhizer & Weaver, Harrisonburg, VA, William R. Norfolk, Sullivan & Cromwell, New York City, for WLR Foods, Inc.

Leslie Allan Grandis, Thomas Francis Farrell, II, McGuire, Woods, Battle & Boothe, Richmond, VA, James Vernon Lane, Litten & Sipe, Harrisonburg, VA, James Linwood Sanderlin, McGuire, Woods, Battle & Boothe, Richmond, VA, James Rothgeb Sipe, Litten & Sipe, Harrisonburg, VA, Thomas Edward Spahn, McGuire, Woods, Battle & Boothe, Richmond, VA, Russell E. Brooks, Milbank, Tweed, Hadley & McCloy, New York City, for Tyson Foods, Inc.

John Walter Zunka, Richard H. Milnor, Taylor & Zunka, Charlottesville, VA, for William H. Groseclose, Herman D. Mason, George E. Bryan, Clavin G. Germroth, Charles W. Wampler, Jr., James L. Keeler, William D. Wampler, Charles L. Campbell, Stephen W. Custer, J. Craig Hott.

## MEMORANDUM OPINION

MICHAEL, District Judge.

WLR Foods, Inc. ("WLR") filed a complaint seeking a declaratory judgment affirming the validity of certain Virginia statutes and certain of its actions taken in defending itself against a hostile takeover commenced by Tyson Foods, Inc. and WLR Acquisition Corp. ("Tyson"). Tyson filed a counterclaim attacking the defenses undertaken by WLR in warding off the takeover attempt. Tyson included various counts asserting claims falling into three general categories: (1) the unconstitutionality of the Virginia statutory scheme regulating corporate takeovers; (2) the invalidity of certain actions undertaken by WLR pursuant to the Virginia Control Share Acquisitions Act ("Control Share Act"), Va.Code Ann. §§ 13.1–728.1 to 13.1–728.9 (Michie 1993); and (3) breaches of fiduciary duty by WLR's Board of Directors. This matter is now before the court for findings of fact and conclusions of law.

### I.

All of the parties have vigorously and voluminously asserted their positions throughout this case. In getting to this point, the court has made three significant rulings. First, the court held that Va.Code Ann. § 13.1–690 (Michie 1993) ("Business Judgment Statute"), is a procedural rather than substantive statute requiring "good faith ... to be measured by the directors' resort to an informed decisionmaking process, not by the rationality of the decision ultimately taken." *WLR Foods, Inc. v. Tyson Foods, Inc.*, 857 F.Supp. 492, 494 (W.D.Va.1994). Next, the court denied Tyson's motion for a preliminary injunction seeking to prevent certain votes from being counted in the shareholder referendum held pursuant to the Control Share Act. *WLR Foods, Inc. v. Tyson Foods, Inc.*, 857 F.Supp. 496 (W.D.Va.1994). Lastly, the court denied another Tyson motion for a preliminary injunction requesting the court to declare unconstitutional Virginia's statutory scheme regulating hostile tender offers. *WLR Foods, Inc. v. Tyson Foods, Inc.*, 861 F.Supp. 1277 (W.D.Va.1994). These three rulings have addressed in some form all of the parties' claims and counterclaims, except for the claims and counterclaims relating to alleged breaches of fiduciary duty by WLR's directors.

After the court's most recent ruling, the parties agreed to submit the case for the

court's decision based upon all of the evidence previously presented plus supplemental affidavits. Most of the supplemental affidavits add little, except reiteration of points already addressed by other evidence. The affidavits submitted by WLR seem to focus upon clarifying the steps taken and the general advice received by WLR's Board of Directors in defending against Tyson's takeover bid. The supplemental affidavit of James Blair, general counsel of Tyson Foods and president of WLR Acquisition Corp., discloses that WLR agreed to acquire Cuddy Farms, Inc. ("Cuddy") on July 27, 1994. This transaction places approximately 10% of WLR stock in Cuddy's hands, and Cuddy has agreed to vote the stock in accordance with the directions of WLR's Board of Directors for a four year period. Tyson contends that this transaction was consummated for the purpose of defeating its attempt to takeover WLR. Based upon what Tyson contends is an excessive overpayment for Cuddy, Blair states that WLR is no longer worth $30 per share to Tyson. The Cuddy acquisition and the uncertainty and delay caused by this litigation have prompted Tyson to withdraw its tender offer. Blair's affidavit asserts, however, that Tyson stills desires to acquire all of WLR's outstanding shares. If this dispute ends favorably for Tyson, it intends to commence a new tender offer to acquire WLR.

## II.

After reviewing all of the evidence submitted by the parties, including all of the supplemental affidavits, the objections to the affidavits, and the responses to the objections to the affidavits, the court sees no reason to alter any of its prior rulings in this case. As a result, the court adopts the findings of fact

and conclusions of law contained in its three previous decisions, as supplemented herein.

■ Both sides seek a ruling concerning WLR's directors' exercise of their fiduciary duty.[1] A Virginia corporation's directors and officers owe a duty of loyalty both to the corporation and to the corporation's shareholders. *Glass v. Glass*, 228 Va. 39, 321 S.E.2d 69, 74 (1984); *Adelman v. Conotti Corp.*, 215 Va. 782, 213 S.E.2d 774, 779 (1975). Tyson alleges that WLR breached its duty by undertaking the following measures in defending against Tyson's takeover attempt: (1) adoption of a discriminatory shareholder rights plan ("Poison Pill") and refusal to redeem it in the face of Tyson's tender offer; (2) adoption of lucrative severance agreements for senior officers to take effect in the event of a change in control of WLR ("Golden Parachutes"); (3) adoption of similar, less lucrative severance agreements for most WLR employees ("Other Parachutes"); (4) amendment of the bylaws setting the record date for any special meeting held pursuant to the Control Share Act as the date on which the acquiring person requests such a meeting ("Record Date Amendment"); (5) amendment of the bylaws to clarify that the Chairman and Vice Chairman of the Board are officers of the Board of Directors, rather than officers of WLR ("Officers Amendment"); and (6) resignation as employees of four directors for the purpose of voting in the control share referendum ("Resignations").

■ The court already has interpreted Va. Code § 13.1–690, which sets the standard for director conduct. *See WLR Foods, Inc. v. Tyson Foods, Inc.*, 857 F.Supp. 492 (W.D.Va. 1994). This statute applies to all of Tyson's challenges regarding the directors' fiduciary duty in defending against the takeover attempt.[2] Only if the directors did not dis-

---

1. Because both sides request a ruling on this issue, and because Tyson's counterclaims are more specific than WLR's general request that the court validate its actions, the court will address Tyson's counterclaims. Any request for relief by WLR relating to its directors' fiduciary duty automatically is subsumed into the court's discussion.

2. Regardless of any standard applicable in other jurisdictions, § 690 applies in Virginia to Tyson's challenges. Section 13.1–646(B) explicitly states

that § 690 is the appropriate standard by which to assess director conduct related to the issuance or redemption of a Poison Pill. Furthermore, § 13.1–728.9 explicitly states that "with respect to any potential changes in control of any issuing public corporation," § 690 applies to "any action taken or not taken by directors." This plain statement by the Virginia legislature forecloses Tyson's argument that the less deferential standard formed in *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del.1985), applies because of

charge their duty "in accordance with [their] good faith business judgment of the best interests of the corporation" will Tyson's challenges succeed.

■ The directors held a four and one-half hour meeting on January 28, 1994 to discuss the situation presented by Tyson's tender offer. At that meeting, they received independent legal advice from Wharton, Aldhizer & Weaver and Sullivan & Cromwell, and they received independent financial advice from Goldman, Sachs, & Co. and Wheat First Butcher & Singer (collectively, the "Advisors"). There is no dispute that the directors believed in good faith that the advice received was within the advisors' professional or expert competence. The advice received at that meeting concerned, *inter alia*, the legal and financial implications of Tyson's offer, whether to adopt a Poison Pill and what its terms should be, and whether to adopt Golden Parachutes. The advisors responded to several questions from the directors, no action was taken, and the directors were given various materials to review before the next meeting.

The next official meeting of the directors occurred on February 4, 1994, lasted over four hours, and was attended by all of the Advisors. At that meeting, the Advisors presented a comprehensive review of the financial details of Tyson's offer and concluded that the offer was inadequate. This presentation included discussion of WLR's recent past financial performance; important considerations taken into account in valuing WLR; the performance, ownership, and trading activity of WLR's common stock; a summary of comments by research analysts regarding WLR; a comparison of WLR to other, similarly situated publicly traded companies; analysis of other recent acquisitions by Tyson; a detailed valuation of WLR and financial analysis at different offer prices; a summary of factors warranting Tyson's interest in acquiring WLR; analysis of several

different merger scenarios incorporating numerous financial variables; and an examination of several alternatives to Tyson's offer.[3] The Advisors' presentations were followed by additional presentations from some of WLR's officers. After questions and discussion by the directors, they voted unanimously to reject Tyson's $30 per share offer. Also at the February 4 meeting, in reliance upon advice given by the Advisors and WLR's Executive Compensation Committee, the directors enacted the Officers Amendment, the Record Date Amendment, the Golden Parachutes, the Other Parachutes, the Poison Pill, and post-retirement health insurance coverage for the four executives who resigned pursuant to the Resignations.[4]

At a further meeting on March 11, 1994, the directors again heard detailed, updated presentations from the Advisors regarding the adequacy of Tyson's tender offer, focusing on most of the same general topics as those that were discussed at the February 4 meeting. After again receiving advice from the Advisors that Tyson's offer was inadequate, the directors decided unanimously that the offer was inadequate and recommended to WLR's shareholders that they not tender their shares to Tyson.

The record discloses that throughout this entire process, the directors had absolutely no knowledge or information making reliance upon the Advisors unwarranted, and Tyson presented no evidence that the directors ever received any advice from anyone stating that Tyson's $30 per share offer was adequate or that any action taken was not in the best interests of the corporation. The evidence shows that in responding to Tyson's offer, the directors sought out and relied in good faith upon competent legal and financial advisors. Furthermore, based upon the record in this case, they did more than merely "rubberstamp" the Advisors' recommendations; they asked several questions of the Advisors and engaged in independent discussion of the

the inherent conflict of interest which other courts have found to exist when directors defend against hostile takeover attempts.

**3.** The court has reviewed *in camera* all of the information provided to WLR by the Advisors at this and other meetings.

**4.** The four directors who were granted health insurance coverage did not participate in the vote on this resolution.

merits of Tyson's offer. Between the January 28 and February 4 meetings, they were given detailed materials to examine in order to prepare themselves for the decisions that they would make. Based upon the record in this case, the directors' decisionmaking process provides a clear indication that their decisions were undertaken pursuant to their good faith business judgment of the best interests of the corporation.

Tyson contends that *Sandberg v. Virginia Bankshares, Inc.*, 891 F.2d 1112 (4th Cir. 1989), *rev'd on other grounds*, 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991), forecloses a finding of good faith by the directors. In *Sandberg*, the Fourth Circuit upheld a jury verdict finding a violation of § 13.1–690, stating: "The case against the directors is that they merely rubberstamped everything placed before them by Bankshares. The evidence fully supports a view that the directors exercised no independent judgment whatsoever...." *Id.* at 1123. In that case, however, the directors who were liable under § 690 were directors of one of two subsidiaries merged by their parent company. Those directors were liable because they simply accepted the recommendation of the parent company's investment advisor, without retaining their own independent advisor to assess the fair value of the stock held by the subsidiary's minority shareholders. *See id.* at 1117. In contrast, WLR's directors engaged in a much more involved process in reaching their decisions and exercised their own independent judgment after receiving advice from their independent advisors. Although it could be said that the directors in *Sandberg* had knowledge or information making reliance upon the parent company's advisors unwarranted, the same is not true of WLR's directors.

Tyson's reliance upon *Adelman v. Conotti Corp.*, 215 Va. 782, 213 S.E.2d 774 (1975), also is misplaced. In *Adelman*, the Virginia Supreme Court found a breach of fiduciary duty to the shareholders when the directors caused new shares to be issued to two of the directors in an effort to prevent a hostile party from gaining control of the corporation. *See id.* 213 S.E.2d at 781. Tyson argues that *Adelman* supports its argument that the directors breached their fiduciary duty by interfering with the shareholder referendum held pursuant to the Control Share Act by arranging the Resignations and diluting the voting power of the disinterested shareholders. *Adelman* is distinguishable, however, in at least two ways. First, the directors did not cause WLR to issue any new shares, thus they did not dilute the shareholders' interests.[5] Secondly, and more importantly, the Resignations were undertaken by the four executives within their role as employees, not as directors. They did not use their powers *as directors* to do anything to the detriment of WLR's shareholders. Quite simply, in resigning as employees, they were not discharging any duties as directors. To the extent that Tyson alleges that the granting of post-retirement health insurance benefits indicates that the Resignations are shams, the court considers those benefits to be recognition for past contributions rather than compensation for current services. *See WLR Foods, Inc. v. Tyson Foods, Inc.*, 857 F.Supp. 496, 500–01 (W.D.Va.1994).[6]

Based upon the record in this case, the decision making process engaged in by WLR's directors demonstrate that their actions were taken in compliance with their good faith business judgment of the best interests of the corporation. As a result, Tyson's counterclaims alleging breaches of fiduciary duty must fail.

---

**5.** Even if it could be said that the Resignations diluted the relative strength of all other disinterested shares solely for the purpose of the shareholder referendum, no harm has been caused to the shareholders or to Tyson. Even ignoring the votes of the shares held by these four directors, the disinterested shareholders still voted overwhelmingly against Tyson. *See WLR Foods, Inc. v. Tyson Foods, Inc.*, 857 F.Supp. 496, 498 & n. 4 (W.D.Va.1994).

**6.** Tyson has alleged that the Resignations constitute a breach of fiduciary duty only because of their effect on the shareholder referendum held pursuant to Control Share Act. Tyson does not allege a breach of fiduciary duty arising from any employment benefits paid to any of these four directors after they no longer performed any real function for WLR, and the court expresses no opinion on such a claim.

### III.

The court adopts herein all of the findings of fact and conclusions of law expressed in its three prior rulings in this case. *See WLR Foods, Inc. v. Tyson Foods, Inc.*, 861 F.Supp. 1277 (W.D.Va.1994); *WLR Foods, Inc. v. Tyson Foods, Inc.*, 857 F.Supp. 496 (W.D.Va. 1994); *WLR Foods, Inc. v. Tyson Foods, Inc.*, 857 F.Supp. 492 (W.D.Va.1994). All of these rulings share one dominant theme—the court's refusal to usurp the power of Virginia's legislature. The remedy, if any, for an overly broad business judgment statute or statutes that impede hostile tender offers lies not with this court, but with the body responsible for crafting such laws.

This court's decision interpreting the statutes at issue rests upon their plain language, and not upon any policy considerations which the Virginia legislature is much better equipped than this court to weigh. This court will not advance a tortured construction of a statute simply to reach a particular result. That the Business Judgment Statute, for example, may appear to offer more protection for directors than do most or all analogous statutes in other states does not alter its plain language. Whether such extensive protection is good or bad for shareholders of Virginia corporations is a decision to be made by Virginia's elected representatives.

Likewise, the constitutionality of Virginia's statutory scheme regulating hostile takeovers does not depend upon its economic wisdom.

[A] constitution is not intended to embody a particular economic theory, whether of paternalism and the organic relation of the citizen to the State or of *laissez faire*. It is made for people of fundamentally differing views, and the accident of our finding certain opinions natural and familiar or novel or even shocking ought not to conclude our judgment upon the question whether statutes embodying them conflict with the Constitution of the United States.

*Lochner v. New York*, 198 U.S. 45, 75–76, 25 S.Ct. 539, 547, 49 L.Ed. 937 (1905) (Holmes, J., dissenting). These statutes may make it more difficult and expensive for Tyson to acquire a Virginia corporation. The statutes may diminish the value of shares in Virginia corporations. Conversely, they may not. The particular effect that enacting these statutes has upon the value of Virginia corporations is unimportant; the importance lies in recognizing that the legislature is empowered to make that determination without interference from this court.

There is not under our Constitution a judicial remedy for every ... exercise of legislative power. The Framers carefully and with deliberate forethought refused so to enthrone the judiciary. In this situation, as in others of like nature, appeal for relief does not belong here. Appeal must be to an informed ... electorate.

*Baker v. Carr*, 369 U.S. 186, 270, 82 S.Ct. 691, 739, 7 L.Ed.2d 663 (1962) (Frankfurter, J., dissenting).

### IV.

The factual findings and legal conclusions contained in this court's three previous rulings are hereby adopted, as supplemented herein. Tyson's breach of fiduciary duty counterclaims fail because, based upon the record in this case, WLR's directors discharged their duties in accordance with their good faith business judgment of the best interests of the corporation.

An appropriate Order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

as follows:

1. WLR's request, contained in paragraph 21(a) of the Amended Complaint for Declaratory and Injunctive Relief, for a declaratory judgment that Articles 14 and 14.1 of the Virginia Stock Corporation Act are valid, lawful, and binding pursuant to both the Virginia and the United States Constitutions shall be, and it hereby is, granted.

2. WLR's request, contained in paragraph 21(b) of the Amended Complaint for Declaratory and Injunctive Relief, for a declaratory judgment that the Rights Plan is

valid, lawful and binding, and that it was adopted in full compliance with the laws of the Commonwealth of Virginia and any other applicable law shall be, and it hereby is, granted. The court cannot determine whether any Rights distributed pursuant to the Rights Plan will be valid and enforceable until such Rights are distributed.

3. WLR's request, contained in paragraph 21(c) of the Amended Complaint for Declaratory and Injunctive Relief, for a permanent injunction preventing Tyson, its affiliates, subsidiaries, officers, directors, and all others acting in concert with them or on their behalf, from bringing any action in any other court (a) challenging the constitutionality and validity of Articles 14 and 14.1 of the Virginia Stock Corporation Act; (b) attacking any aspect of the Rights Plan; or (c) otherwise relating to or involving Tyson's proposal to acquire WLR and the response to that proposal by WLR and its directors, officers, or agents, under state law or federal law shall be, and it hereby is, denied, except to the extent that ordinary principles of res judicata and collateral estoppel apply.

4. WLR's request, contained in paragraph 21(d) of the Amended Complaint for Declaratory and Injunctive Relief, for costs and disbursements, including reasonable attorneys' fees shall be, and it hereby is, denied.

5. Tyson's request, contained in paragraph 94(a) of the Amended and Supplemental Counterclaims, for a declaratory judgment that the shares owned by counterclaim defendants William Wampler, Charles Wampler, George Bryan and Herman Mason are "interested shares" under the Control Share Act shall be, and it hereby is, denied.

6. Tyson's request, contained in paragraph 94(b) of the Amended and Supplemental Counterclaims, for a declaratory judgment that the Directors have breached and continue to breach their fiduciary duties and duty of loyalty shall be, and it hereby is, denied.

7. Tyson's request, contained in paragraph 94(c) of the Amended and Supplemental Counterclaims, for a declaratory judg-

ment that the Control Share Act is unconstitutional shall be, and it hereby is, denied.

8. Tyson's request, contained in paragraph 94(d) of the Amended and Supplemental Counterclaims, for a declaratory judgment that the Virginia Affiliated Transactions Statute is unconstitutional shall be, and it hereby is, denied.

9. Tyson's request, contained in paragraph 94(e) of the Amended and Supplemental Counterclaims, for a declaratory judgment that the Disenfranchisement Amendment, Anti–Referendum Changes and Poison Pill are invalid shall be, and it hereby is, denied.

10. Tyson's request, contained in paragraph 94(f) of the Amended and Supplemental Counterclaims, for a declaratory judgment that the Virginia statutory scheme regulating mergers and acquisitions is unconstitutional shall be, and it hereby is, denied.

11. Tyson's request, contained in paragraph 95(a) of the Amended and Supplemental Counterclaims, for a permanent injunction directing WLR to rescind the Disenfranchisement Amendment, or in the alternative to enjoin the operation of such Bylaw shall be, and it hereby is, denied.

12. Tyson's request, contained in paragraph 95(b) of the Amended and Supplemental Counterclaims, for a permanent injunction directing WLR to rescind the Anti–Referendum Changes, or in the alternative to enjoin the voting of any shares owned, directly or indirectly, by George Bryan, Herman Mason, Charles Wampler and William Wampler shall be, and it hereby is, denied.

13. Tyson's request, contained in paragraph 95(c) of the Amended and Supplemental Counterclaims, for a permanent injunction enjoining WLR from interfering in any way with the conduct of a prompt, fair, and impartial referendum under the Control Share Act shall be, and it hereby is, granted. None of the actions undertaken by WLR and challenged by Tyson in this lawsuit, however, interfere in any way with the conduct of a prompt, fair, and impartial referendum under the Control Share Act.

14. Tyson's request, contained in paragraph 95(d) of the Amended and Supplemen-

tal Counterclaims, for a permanent injunction directing WLR to rescind, or in the alternative to redeem, the Poison Pill shall be, and it hereby is, denied.

15. Tyson's request, contained in paragraph 95(e) of the Amended and Supplemental Counterclaims, for a permanent injunction enjoining WLR from taking any action in furtherance of the Poison Pill, Golden Parachutes, or Other Parachutes shall be, and it hereby is, denied.

16. Tyson's request, contained in paragraph 95(f) of the Amended and Supplemental Counterclaims, for a permanent injunction enjoining WLR from engaging in any transactions involving the issuance of WLR's voting securities shall be, and it hereby is, denied.

17. Tyson's request, contained in paragraph 95(g) of the Amended and Supplemental Counterclaims, for a permanent injunction directing WLR to rescind the Golden Parachutes and Other Parachutes shall be, and it hereby is, denied.

18. Tyson's request, contained in paragraph 96 of the Amended and Supplemental Counterclaims, for an Order directing WLR to make available for inspection and copying to Tyson or its representatives the corporate records to which Tyson states that it is entitled under Virginia Code §§ 13.1–770 to 13.1–771 shall be, and it hereby is, denied because Virginia law states that such an Order should be entered by the circuit court in the city or county where the corporation's principal office is located. *See* Va.Code Ann. § 13.1–773 (Michie 1993).

19. Tyson's request, contained in paragraph 112 of the Amended and Supplemental Counterclaims, for a declaratory judgment that the shares owned or controlled by the Directors and their Associates, as defined by Va.Code Ann. § 13.1–728.1 (Michie 1993), are Interested Shares under the Control Share Act shall be, and it hereby is, denied except to the extent that any such Director is also an employee of WLR. Tyson's request for a declaratory judgment that the shares owned or controlled by WLR's Officers and their Associates, as defined by Va.Code Ann. § 13.1–728.1 (Michie 1993), are Interested

Shares under the Control Share Act shall be, and it hereby is, granted.

20. Tyson's request, contained in paragraph 113 of the Amended and Supplemental Counterclaims, for a permanent injunction enjoining WLR from voting or permitting the voting on the Tyson Proposal of any WLR shares owned or controlled by the Directors, WLR's Officers, or their Associates shall be, and it hereby is, denied except to the extent that any such shares are interested shares, as defined by Va.Code Ann. § 13.1–728.1 (Michie 1993).

21. Tyson's request, contained in paragraph 114 of the Amended and Supplemental Counterclaims, for costs and attorneys' fees shall be, and it hereby is, denied.

22. This action shall be, and it hereby is, dismissed and stricken from the docket of the court.

The clerk is hereby directed to send a certified copy of this Order, and the accompanying Memorandum Opinion, to all counsel of record.