**WLR FOODS, INC., Plaintiff,**

v.

**TYSON FOODS, INC., Defendant.**

**TYSON FOODS, INC. and WLR Acquisition Corp., Counterclaimants,**

v.

**WLR FOODS, INC., et al., Counterclaim-defendants.**

Civ. A. No. 94–012–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

June 1, 1994.

---

Douglas Leigh Guynn, Wharton, Aldhizer & Weaver, Harrisonburg, VA and William R. Norfolk, Sullivan & Cromwell, New York City, for WLR Foods, Inc.

Leslie Allan Grandis, Thomas Francis Farrell, II, James Linwood Sanderlin, Thomas Edward Spahn, McGuire, Woods, Battle & Boothe, Richmond, VA, James Rothgeb Sipe, Litten & Sipe, Harrisonburg, VA and Russell E. Brooks, Milbank, Tweed, Hadley & McCloy, New York City, for Tyson Foods, Inc.

John Walter Zunka, Taylor & Zunka, Ltd., Charlottesville, VA, for William H. Groseclose, Herman D. Mason, George E. Bryan, Calvin G. Germroth, Charles W. Wampler, Jr., James L. Keeler, William D. Wampler, Charles L. Campbell, Stephen W. Custer, and J. Craig Hott.

## MEMORANDUM OPINION AND ORDER

MICHAEL, District Judge.

The matter is now before the court on Tyson's objection, filed May 6, 1994, to the April 16, 25, and 28, 1994 nondispositive orders of the Magistrate Judge. Tyson objects to those orders to the extent they prevent Tyson from inquiring, in discovery, into the substance of professional advice given to WLR in the face of Tyson's takeover attempt. The court finds no factual issues in dispute; the Magistrate Judge's orders therefore must stand unless they are contrary to law. Fed.R.Civ.P. 72(a).

▮ At the center of the present matter is the Magistrate Judge's April 25, 1994 Memorandum Opinion and Order, which sets forth the Magistrate Judge's view of the Virginia statutory scheme as it bears on the issue of the extent to which courts may review actions taken by corporate directors. Specifically, Tyson objects to the Magistrate Judge's conclusion (and the orders following from it) that the Virginia standard of director conduct is a process-oriented one, not a substantive one as measured by Delaware law and traditional formulations of the business judgment rule. *See Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del.1985); *C–T of Virginia, Inc. v. Barrett*, 124 B.R. 689, 692 (W.D.Va.1990), *superseded by statute, WLR Foods, Inc. v. Tyson Foods, Inc.*, 155 F.R.D. 142 (W.D.Va. 1994). Tyson argues that the question of "good faith" decisionmaking under the relevant Virginia statute, Va.Code

Ann. § 13.1–690 (Michie 1993), cannot be proven or disproved without inquiry into the substance of the advice WLR relied on in developing its response to Tyson's takeover attempt.

The court finds that the appropriate reading of the law is the one the Magistrate Judge has supplied. The court is struck by the fact that when it enacted § 13.1–690, the General Assembly generally chose to follow the lead of the Model Business Corporation Act except with regard to the Model Act's reasonableness standard for judging the propriety of director conduct. *Compare* Model Act § 8.30(a) *with* Va.Code Ann. § 13.1–690. *See* Daniel T. Murphy, *The New Virginia Stock Corporation Act: A Primer*, 20 U.Rich.L.Rev. 67, 104–109 (1985). This signals legislative rejection of a substantive evaluation of director conduct, that is, evaluation in terms of the rationality of the conduct. Instead, courts are required to find some other indicia of "good faith business judgment of the best interests of the corporation," which is the standard to which directors are now held pursuant to § 13.1–690.

For the most part, the statute provides this indicia in subsection B, which creates something of a safe harbor for directors who rely on competent advice. § 13.1–690(B). This suggests that good faith is to be measured by the directors' resort to an informed decisionmaking process, not by the rationality of the decision ultimately taken. Of course, resort to the process must itself be undertaken in good faith: the directors must believe in good faith that their advisors are competent to render the advice sought, and they must be aware of no facts which would make reliance on that advice unwarranted. *See id.*

Thus, at some level, as Tyson suggests, there will be an inquiry into the director's subjective good faith. This is not to say, however, that this subjective good faith must be measured by the substantive soundness of the directors' actions. Certainly a reasonableness review of those actions would be useful in determining good faith, but this would thoroughly undermine the General Assembly's decision in § 13.1–690(A) to reject the Model Act's substantive component. As

Magistrate Judge Crigler suggested on a related issue, this would accomplish by the back door that which is forbidden by the front.

█ Instead, the means of addressing good faith for Tyson must be in keeping with the procedural thrust of the statute. Neither the statute nor the Magistrate Judge's order would necessarily preclude, for instance, inquiry into the identity and qualifications of any sources of information or advice sought which bear on the decision reached, the circumstances surrounding selection of these sources, the general topics (but not the substance) of the information sought or imparted, whether advice was actually given, whether it was followed, and if not, what sources of information and advice *were* consulted to reach the decision in issue. In short, the statute permits inquiry into the procedural indicia of whether the directors resorted in good faith to an informed decisionmaking process.

█ The Fourth Circuit's decision in *Sandberg v. Virginia Bankshares, Inc.*, 891 F.2d 1112, 1123 (4th Cir.1989), *rev'd and remanded on other grounds*, 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) is not to the contrary. There, as WLR suggests, the Court found most salient the directors' failure to retain independent experts and their blind allegiance to the advice they received. *See id.* That sort of conduct would be as impermissible under this court's reading of § 690 as it would under a standard that would command a review of director action for reasonableness. Bald assertions of director prerogative to reach any sort of decision by any process would not suffice under either standard. And of course, as the Magistrate Judge pointed out, *Sandberg* never directly addressed the changes brought about in the law by § 690(A).

The same is true of a later incarnation of the *Sandberg* litigation, *Sandberg v. Virginia Bankshares*, 979 F.2d 332, 354 (4th Cir.1992), *vacated*, 1993 WL 524680 (4th Cir.1993), in which the Fourth Circuit held that shareholders had an interest in determining whether a majority shareholder had played a role in a challenged board decision. This

concern would not necessarily require disclosure of the substance of the input the majority shareholder might have offered. Moreover, the Fourth Circuit was not confronted with a statutory limitation on such communications, as distinct from the attorney-client privilege asserted in that case against disclosure.

Tyson seeks to circumvent the implications of § 690, as the Magistrate Judge and this court have construed it, by arguing that the statute does not apply in this case. One strand of this argument suggests that § 690 did not repeal common law standards of director conduct where director conflicts of interest are alleged, as here. As to conflicts not arising inherently from the takeover attempt (that is, between a director and the corporation), however, that jurisprudence finds expression in § 13.1–691. *See Izadpanah v. Boeing Joint Venture*, 243 Va. 81, 412 S.E.2d 708 (1992). The Magistrate Judge correctly pointed out that no reasonableness inquiry is suggested by that statute, nor inquiry into the advice the director received. As to conflicts arising out of a hostile takeover, the Virginia statutory scheme is clear that § 13.1–690 sets the standard for director actions taken in response to such a takeover. *See* §§ 13.1–646, 728.9.[1]

■ The same response applies to the second strand of Tyson's attempted evasion of § 690. This time, Tyson contends that § 690 only protects the individual directors from personal liability for misconduct and that the *Unocal* scheme under Delaware law governs even in Virginia as to injunctive suits challenging the board's actions. That scheme, unsurprisingly, commands an inquiry into the reasonableness of corporate action taken in the face of a takeover. *See* 493 A.2d 946. Again, however, the General Assembly has insulated not only the directors, but the actions they have taken, so long as those actions were taken pursuant to § 690. *See* §§ 13.1–646, 728.9. Simply put, § 690 is the only state law avenue for challenge to WLR's measures taken in anticipation of Tyson's takeover attempt. If there remain such common law avenues at all, they are not implicated here.

■ The court is similarly unpersuaded by Tyson's argument that WLR somehow waived its privilege not to communicate the substance of advice it received by seeking a declaratory judgment in this case to the effect that its actions were undertaken in good faith. As the court has already held, the "privilege" in issue here is statutory, governed by § 690. WLR's request for a declaration that its conduct complies with that statutory standard by no means places in issue the substance of the advice it received, for as the court has now held, this kind of information is not relevant under § 690.

■ Lastly, Tyson claims that a failure to permit discovery on the substance of advice WLR received will lead to wasteful rediscovery if this court's § 690 construction is overruled on appeal. Tyson claims that any such discovery would be subject to an appropriate protective order. This, as the Magistrate Judge commented, is a "discover now, argue later" approach to this issue. The court's holding simply makes irrelevant, however, the substance of advice given. The Magistrate Judge therefore was correct, based on a similar holding, to conclude that the advice was not "reasonably calculated to lead to the discovery of admissible evidence," and therefore was not discoverable pursuant to Fed. R.Civ.P. 26(b)(1).

For these reasons, it is this day

---

1. Section 13.1–646 (share options) states, in relevant part: "Any action or determination by the board of directors with respect to the issuance, the terms and conditions or redemption of rights, options, or warrants shall be subject to the provisions of § 13.1–690 and shall be valid if taken or determined in compliance therewith."

Section 13.1–728.9 (nonexclusivity) states:

Except as expressly provided in this article, neither the provisions of this article nor their application to any acquiring person shall limit actions that may be taken, or require the taking of any action, by the board of directors or shareholders with respect to any potential changes in control of any issuing public corporation. In the case of any action taken or not taken by directors, the provisions of § 13.1–690 shall apply, and, in determining the best interests of the corporation, a director may consider the possibility that those interests may best be served by the continued independence of the corporation.

496

ADJUDGED AND ORDERED

that Tyson's May 6, 1994 objection to the April 16, 25, and 28, 1994 nondispositive orders of the Magistrate Judge shall be, and it hereby is, overruled.