# 133 Nev., Advance Opinion 52
## IN THE SUPREME COURT OF THE STATE OF NEVADA

WYNN RESORTS, LIMITED,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
ELIZABETH GOFF GONZALEZ,
DISTRICT JUDGE,
Respondents,
    and
KAZUO OKADA; UNIVERSAL
ENTERTAINMENT CORP.; AND
ARUZE USA, INC.,
Real Parties in Interest.

No. 70050

**FILED**

JUL 27 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

WYNN RESORTS, LIMITED,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
ELIZABETH GOFF GONZALEZ,
DISTRICT JUDGE,
Respondents,
    and
KAZUO OKADA; UNIVERSAL
ENTERTAINMENT CORP.; AND
ARUZE USA, INC.,
Real Parties in Interest.

No. 70452

Original petitions for writs of mandamus or prohibition from district court orders granting motions to compel the production of documents.

 

*Petition granted (Docket No. 70050); and petition granted in part, with instructions (Docket No. 70452).*

Pisanelli Bice, PLLC, and Todd L. Bice, James J. Pisanelli, and Debra L. Spinelli, Las Vegas; Wachtell, Lipton, Rosen & Katz and Paul K. Rowe and Bradley R. Wilson, New York, New York; Glaser Weil Fink Howard Avchen & Shapiro, LLP, and Robert L. Shapiro, Los Angeles, California, for Petitioner.

Morris Law Group and Steve L. Morris and Rosa Solis-Rainey, Las Vegas; Holland & Hart LLP and J. Stephen Peek, Bryce K. Kunimoto, and Robert J. Cassity, Las Vegas; Buckley Sandler LLP, and David S. Krakoff, Benjamin B. Klubes, and Adam Miller, Washington, D.C., for Real Parties in Interest.

---

BEFORE THE COURT EN BANC.[1]

## OPINION

By the Court, HARDESTY, J.:

In these related original petitions for extraordinary writ relief arising from the same underlying district court action, we consider whether documents otherwise protected by the attorney-client privilege must be disclosed when the business judgment rule is asserted as a defense and under what circumstances a document may be protected by the work-product privilege even if it is at issue in the litigation. In Docket

---

[1]The Honorable Kristina Pickering and the Honorable Ron Parraguirre, Justices, voluntarily recused themselves from participation in the decision of this matter.

No. 70050, we conclude that the district court erred when it compelled petitioner Wynn Resorts, Limited, to produce certain documents from its attorneys with the law firm Brownstein Hyatt Farber Schreck, LLP (Brownstein Hyatt) based solely on Wynn Resorts' assertion of the business judgment rule as a defense. Therefore, we grant Wynn Resorts' petition for writ relief in Docket No. 70050.

In Docket No. 70452, we agree with the district court that Wynn Resorts waived the attorney-client privilege by placing a report (the Freeh Report) at issue in the initial litigation. However, the work-product privilege may apply to some of the documents compiled in the preparation of the Freeh Report. We take this opportunity to join the majority of jurisdictions that utilize a "because of" test with a "totality of the circumstances" standard for determining whether work was done "in anticipation of litigation." As such, we grant in part Wynn Resorts' petition for writ relief in Docket No. 70452 and direct the district court to apply the "because of" test to determine whether the work-product privilege applies to the documents underlying the Freeh Report.

## FACTS AND PROCEDURAL HISTORY

Real party in interest Kazuo Okada owned approximately half of Wynn Resorts' stock through Aruze USA, Inc., of which he is the principal. Okada also served on Wynn Resorts' board of directors (the Board). Wynn Resorts alleges in the underlying litigation that it developed concerns about the suitability of Aruze, Okada, and Aruze's parent corporation, Universal Entertainment Corp. (collectively, the "Okada Parties"), as shareholders of Wynn Resorts after Okada began developing a casino resort in the Philippines. In particular, the Board asserts that it believed that Aruze's continued ownership of its stock could put Wynn Resorts' gaming licenses at risk.

The Board conducted an investigation over several years into the business climate in the Philippines and Okada's involvement there. The Board alleges it ultimately determined that any involvement by Okada in the Philippines was ill advised; however, Okada advised the Board that he was proceeding with his project in the Philippines.

*Wynn retains the Freeh Group*

The Board hired former federal judge and FBI director Louis J. Freeh and his firm (the Freeh Group) to investigate and report on Okada's business in the Philippines. The Freeh Group's letter of engagement indicates that the Freeh Group was hired as legal counsel to investigate Okada and present its findings to the Board in order to determine if Okada's activities violated Wynn Resorts' policies and potentially placed Wynn Resorts' gaming licenses in jeopardy.

The Freeh Group's investigation resulted in the 47-page Freeh Report, which included allegations of misconduct by Okada in the development of his Philippines project. The Freeh Group presented its findings to the Board, providing all directors other than Okada with a copy of the Freeh Report. The Board also received advice from two law firms, including Brownstein Hyatt, regarding the contents of the Freeh Report and the Okada Parties' potential suitability issues.

The Board ultimately adopted resolutions finding the Okada Parties to be "[u]nsuitable persons" under Wynn Resorts' Articles of Incorporation, Article VII, § 1(*l*)(iii). It thereafter exercised its "sole discretion" and redeemed Aruze's Wynn Resorts stock, pursuant to Article VII, § 2(a) of its Articles of Incorporation, in exchange for a promissory note with a principal value of $1.9 billion, which the Okada Parties allege is only a fraction of the value of the redeemed stock.

 

The next day, Wynn Resorts filed a complaint against the Okada Parties for declaratory relief, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. The complaint stated that the Board relied on the Freeh Report and the advice of its gaming attorneys in redeeming Aruze's shares. The Freeh Report was also attached to the complaint. The Okada Parties filed counterclaims seeking declaratory relief and a permanent injunction rescinding the redemption of the stock, and alleging claims for breach of contract, breach of Wynn Resorts' articles of incorporation, and various other tort-based causes of action.

Wynn Resorts filed notice of its lawsuit with the Securities and Exchange Commission, and attached a copy of the Freeh Report. Wynn Resorts also allegedly provided a copy of the Freeh Report to the *Wall Street Journal*.

*Motion to compel: Brownstein Hyatt documents (Docket No. 70050)*

In March 2016, the Okada Parties filed a motion to compel Wynn Resorts to produce documents Brownstein Hyatt generated in the course of developing and rendering its advice to the Board. The Okada Parties argued that Wynn Resorts had waived the attorney-client privilege and the attorney-work-product protection, claiming that Wynn Resorts placed Brownstein Hyatt's advice at-issue in the litigation. Wynn Resorts contended that merely stating that the directors sought and received legal advice prior to making their business decision did not place the substance of the legal advice at issue.

The district court granted the Okada Parties' motion to compel, stating that because Wynn Resorts asserted the business

judgment rule as a defense,[2] Wynn Resorts put the attorneys' advice at issue, and accordingly ordered Wynn Resorts to produce all documents that Brownstein Hyatt provided for the Board's use in considering Okada's suitability and the possible redemption of shares.[3]

*Motions to compel: Freeh Report documents (Docket No. 70452)*

In September 2015, the Okada Parties filed a motion to compel Wynn Resorts to produce evidence and documents underlying the Freeh Report. Wynn Resorts had previously responded to the Okada Parties' requests for the documents on which the Freeh Report was based with a privilege log listing approximately 6,000 documents that it withheld or redacted on the basis of the attorney-client privilege or work-product doctrine. The Okada Parties argued that the Freeh Group's work was not protected by either the attorney-client privilege or work-product doctrine because Wynn Resorts attached the Freeh Report to its complaint and provided it to a newspaper to broadcast its accusations against Okada.

---

[2]Although Wynn Resorts' Articles of Incorporation gave the Board the "sole discretion" to redeem Aruze's shares, both sides nevertheless appear to agree that the Board's actual motivation for redeeming the shares is relevant, thereby implicating the business judgment rule.

[3]While the Okada Parties seek to argue that an at-issue waiver applies to the Brownstein Hyatt documents (Docket No. 70050), the district court did not find there to be an at-issue waiver in relation to the Brownstein Hyatt documents; rather, it based the alleged waiver on Wynn Resorts' assertion of the business judgment rule as a defense. This court "cannot consider matters not properly appearing in the record on appeal." *Carson Ready Mix, Inc. v. First Nat'l Bank of Nev.*, 97 Nev. 474, 476, 635 P.2d 276, 277 (1981).

 

The district court granted, in part, the Okada Parties' motion to compel the Freeh Report documents. The district court found that some of the documents may be protected under the attorney-client privilege, but that because the Freeh Report documents were not prepared in anticipation of litigation, the work-product doctrine did not apply. The district court also noted that when Wynn Resorts attached the Freeh Report and its appendices to the complaint, it was not a wholesale waiver of privilege. The district court then ordered that Wynn Resorts had 15 days to supplement the privilege log in accordance with the court's findings.

In January 2016, the Okada Parties filed a second motion to compel Wynn Resorts to produce the Freeh Report documents. The Okada Parties argued that Wynn Resorts was withholding documents in violation of the district court's prior order, and that those documents were not privileged due to either waiver of the attorney-client privilege or at-issue waiver. After conducting an *in camera* review of approximately 25 percent of the documents, the district court granted the Okada Parties' second motion to compel in part, ordering that because the work was not done in anticipation of litigation, the work-product doctrine did not apply to any Freeh Report documents created prior to February 22, 2012 (the date when preparation of the appendices to the Freeh Report was completed), and that Wynn Resorts waived any attorney-client privilege of the documents by public disclosure of the Freeh Report and under the at-issue waiver doctrine.

## DISCUSSION

In these petitions seeking writs of prohibition or mandamus, Wynn Resorts argues that the district court erred in granting, in part, the Okada Parties' motion to compel the production of the Brownstein Hyatt

documents (Docket No. 70050), and by granting, in part, the Okada Parties' motion to compel the production of the Freeh Report documents (Docket No. 70452). As part of this argument, Wynn Resorts contends that the district court erred in concluding that by claiming the business judgment rule as a defense, Wynn Resorts waived the attorney-client privilege.

To resolve these petitions, we first determine that the business judgment rule protects action by a board of directors, just as it protects an individual director's action. We must then examine whether, by claiming the business judgment rule as a defense, Wynn Resorts waived any attorney-client privilege as to the Brownstein Hyatt documents. We then determine whether Wynn Resorts waived any attorney-client privilege by placing the Freeh Report at issue in the underlying litigation and whether the work-product doctrine applies to the documents underlying the Freeh Report.

*Writ relief is appropriate*

"[T]he issuance of a writ of mandamus or prohibition is purely discretionary with this court." *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). This court will not exercise that discretion "unless legal, rather than factual, issues are presented." *Round Hill Gen. Improvement Dist. v. Newman*, 97 Nev. 601, 604, 637 P.2d 534, 536 (1981).

A writ of prohibition may issue when the district court exceeds its authority, NRS 34.320, and it "is a more appropriate remedy for the

prevention of improper discovery than mandamus."[4] *Wardleigh v. Second Judicial Dist. Court*, 111 Nev. 345, 350, 891 P.2d 1180, 1183 (1995). To that end, "a writ of prohibition is an appropriate remedy to correct an order that compels disclosure of privileged information." *Las Vegas Dev. Assocs., LLC v. Eighth Judicial Dist. Court*, 130 Nev., Adv. Op. 37, 325 P.3d 1259, 1262 (2014).

These petitions merit this court's consideration as they raise important issues concerning the scope of discovery and privilege in relation to the business judgment rule. Further, if the discovery permitted by the district court is inappropriate, a later appeal would not remedy any improper disclosure of the information. *Wardleigh*, 111 Nev. at 350-51, 891 P.2d at 1183-84. Accordingly, we choose to entertain these petitions.

*Attorney-client privilege*

The attorney-client privilege is a long-standing privilege at common law that protects communications between attorneys and clients. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose of the attorney-client privilege is to encourage clients to make full disclosures to their attorneys in order to promote the broader public interests of recognizing the importance of fully informed advocacy in the administration of justice. *Id.*

Nevada codified the attorney-client privilege at NRS 49.095. For this privilege to apply, the communications must be between an attorney and client, for the purpose of facilitating the rendition of professional legal services, and be confidential. *Id.* "A communication is

---

[4]Accordingly, we deny Wynn Resorts' alternative requests for writs of mandamus.

'confidential' if it is not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." NRS 49.055.

Protected communications can be from a lawyer to a client or from a client to a lawyer. *See Upjohn*, 449 U.S. at 390. Mere facts are not privileged, but communications about facts in order to obtain legal advice are. *See id.* at 395-96; *see also Wardleigh*, 111 Nev. at 352, 891 P.2d at 1184. Communications may be disclosed to other persons within a corporation or legal team in order to facilitate the rendition of legal advice without losing confidentiality; however, the disclosure must only be to the limited group of persons who are necessary for the communication, and attempts must be made to keep the information confidential and not widely disclosed. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980). No privilege exists if the communications are accessible to the general public in other manners, because the communications are therefore not confidential. *See Cheyenne Constr., Inc. v. Hozz*, 102 Nev. 308, 311-12, 720 P.2d 1224, 1226 (1986).

Both the Brownstein Hyatt documents at issue in Docket No. 70050 and the Freeh Report documents at issue in Docket No. 70452 are potentially protected by the attorney-client privilege. *See* NRS 49.095.

*Wynn Resorts did not waive the attorney-client privilege as to the Brownstein Hyatt documents by asserting the business judgment rule*

Wynn Resorts invoked the business judgment rule in its complaint by alleging that the Board relied on the advice of its gaming attorneys and the Freeh Report in reaching its decision to redeem the Aruze's shares. "The business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an

 

informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Shoen v. SAC Holding Corp.*, 122 Nev. 621, 632, 137 P.3d 1171, 1178-79 (2006) (internal quotation marks omitted). Under this rule, a director will not be liable for damages based on a business decision unless it can be shown that the director breached his fiduciary duties and that such breach involved intentional misconduct, fraud, or a knowing violation of the law. NRS 78.138(7). Nevada's business judgment rule is codified at NRS 78.138,[5] which states, in pertinent part, as follows:

> 1. Directors and officers shall exercise their powers in good faith and with a view to the interests of the corporation.
>
> 2. In performing their respective duties, directors and officers are entitled to rely on information, opinions, reports, books of account or statements, including financial statements and other financial data, that are prepared or presented by:
>
> (a) One or more directors, officers or employees of the corporation reasonably believed to be reliable and competent in the matters prepared or presented;
>
> (b) Counsel, public accountants, financial advisers, valuation advisers, investment bankers or other persons as to matters reasonably believed to be within the preparer's or presenter's professional or expert competence; or

---

[5]The 2017 Legislature amended NRS 78.138 after the district court issued its order. 2017 Nev. Stat., ch. 559; S.B. 203, 79th Leg. (Nev. 2017). However, the amendments to NRS 78.138 do not change our conclusions.

(c) A committee on which the director or officer relying thereon does not serve, established in accordance with NRS 78.125, as to matters within the committee's designated authority and matters on which the committee is reasonably believed to merit confidence,

but a director or officer is not entitled to rely on such information, opinions, reports, books of account or statements if the director or officer has knowledge concerning the matter in question that would cause reliance thereon to be unwarranted.

3. Directors and officers, in deciding upon matters of business, are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation.

*The business judgment rule applies to the Board*

As a threshold matter in determining whether the Board waived the attorney-client privilege as to the Brownstein Hyatt documents by asserting the business judgment rule as a defense in the underlying district court action, we must address the Okada Parties' argument that the business judgment rule applies only to individual directors and officers and not the Board itself. We disagree.

The business judgment rule does not only protect individual directors from personal liability, rather, it "expresses a sensible policy of judicial noninterference with business decisions and is designed to limit judicial involvement in business decision-making so long as a minimum level of care is exercised in arriving at the decision." 18B Am. Jur. 2d *Corporations* § 1451 (2016). Specifically, it prevents a court from "replac[ing] a well-meaning decision by a corporate board" with its own decision. *Id.; see also Lamden v. La Jolla Shores Clubdominium Homeowners Ass'n*, 980 P.2d 940, 945 (Cal. 1999) ("A hallmark of the business judgment rule is that, when the rule's requirements are met, a

court will not substitute its judgment for that of the corporation's board of directors.").

This court has previously applied the business judgment rule to board action in *Shoen*, 122 Nev. at 636-37, 137 P.3d at 1181 ("Consequently, a plaintiff challenging a business decision and asserting demand futility must sufficiently show that either the board is incapable of invoking the business judgment rule's protections (*e.g.*, because the directors are financially or otherwise interested in the challenged transaction) or, if the board is capable of invoking the business judgment rule's protections, that that rule is not likely to in fact protect the decision. . . ."). We therefore conclude that the business judgment rule applies to the Board.

*The business judgment rule precludes judicial interference with decision-making when a director or board of directors acts in good faith*

Having concluded that the Board properly invoked the business judgment rule, we must next examine what courts should consider in determining whether a business decision was made in good faith. Because we determine that Nevada's statutory business judgment rule precludes courts from reviewing the substantive reasonableness of a board's business decision, we conclude that an evaluation of the substance of the advice the Board received from its attorney, and thus discovery regarding the substance of that advice, is unnecessary in determining whether the Board acted in good faith.

It is well established that "a court that applies the business judgment rule will not 'second-guess' a particular decision made by a corporation's directors or officers if the requirements of the business judgment rule are satisfied." Joseph F. Troy & William D. Gould,

*Advising & Defending Corporate Directors and Officers* § 3.15 (Cal CEB rev. ed. 2007). As such, "[a] court will review the merits of a director's decision only if" a plaintiff can "rebut the presumption that a director's decision was valid by showing either that the decision was the product of fraud or self-interest or that the director failed to exercise due care in reaching the decision." *Id.* "As a general rule, courts may not inquire into the merits of [a] determination." Clifford R. Ennico, *West's McKinney's Forms Business Corporate Law* § 8:34 (2016).

Nevada's business judgment statute is a modified version of Section 8.30(e) of the Model Business Corporation Act. *Compare* NRS 78.138 *with* 2 Model Business Corporation Act Annotated § 8.30(e) (4th ed. 2011). By a plain reading of both texts, it is apparent that the Legislature adopted a great portion of the Model Act, with the exception of its "reasonableness" standard for judging whether a director's conduct should be protected. *Id.* "This signals legislative rejection of a substantive evaluation of director conduct." *WLR Foods, Inc. v. Tyson Foods, Inc.*, 857 F. Supp. 492, 494 (W.D. Va. 1994).

*Determining whether a director or board of directors acted in good faith*

While "a reasonableness review of [a director's] actions would be useful in determining good faith," doing so "would thoroughly undermine [the Legislature's] decision . . . to reject the Model Act's substantive component," which "would accomplish by the back door that which is forbidden by the front." *Id.* As such, we conclude that an evaluation of the substantive advice a Board receives from its attorney is unnecessary in showing that the Board acted in good faith. *See, e.g., WLR Foods, Inc. v. Tyson Foods, Inc.*, 65 F.3d 1172, 1187 (4th. Cir. 1995) (where the court held that "[w]e find the district court's decision limiting

discovery . . . to be a sound one under Virginia law. Knowledge of the substantive advice given to the WLR Board was not reasonably calculated to lead to a determination regarding good faith . . . and the district court acted within its discretion in limiting Tyson's access to that information").

Instead, a court can address whether a director acted in good faith without seeking substantive information. The United States District Court for the Western District of Virginia has established factors for determining whether a director acted in good faith, such as through:

> inquiry into the identity and qualifications of any sources of information or advice sought which bear on the decision reached, the circumstances surrounding selection of these sources, the general topics (but not the substance) of the information sought or imparted, whether advice was actually given, whether it was followed, and if not, what sources of information and advice *were* consulted to reach the decision in issue.

*WLR Foods*, 857 F. Supp. at 494. "In short, the statute permits inquiry into the procedural indicia of whether the directors resorted in good faith to an informed decisionmaking process." *Id.* We take this opportunity to adopt the factors developed by the United States District Court for the Western District of Virginia in *WLR Foods* for determining whether an individual director or board of directors acted in good faith and, in turn, whether protection under the business judgment rule is available.

Accordingly, we reiterate that the business judgment rule goes beyond shielding directors from personal liability in decision-making. Rather, it also ensures that courts defer to the business judgment of corporate executives and prevents courts from "substitut[ing] [their] own notions of what is or is not sound business judgment," *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971), if "the directors of a corporation

acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000).

*The district court erred in finding that Wynn Resorts waived the attorney-client privilege of the Brownstein Hyatt documents (Docket No. 70050)*

In granting the motion to compel, the district court stated that "[t]o the extent that information was provided to the members of the board of directors for their consideration in the decision-making process and their defense related to the business judgment rule the Okada [P]arties are entitled to test whether the director or officer had knowledge concerning the matter in question that would cause reliance thereon to be unwarranted." The district court further stated that "[t]he only way that [the Okada Parties] can get to that part of the statute is by having the information that was provided to the board members." Ultimately, the district court found that "[b]y asserting the [b]usiness [j]udgment [r]ule as a defense, the members of the Board of Directors of Wynn Resorts have put at issue certain advice they received from Brownstein Hyatt" and ordered Wynn Resorts to produce all the documents Brownstein Hyatt provided to the Board in relation to the Okada Parties.

Wynn Resorts argues that the district court's interpretation and application of NRS 78.138 is flawed because the statute does not indicate that asserting the business judgment rule as a defense waives attorney-client privilege. Further, to read such a waiver into the statute discourages board members from making informed decisions, which ultimately undermines the policy behind the rule.

Supreme Court
OF
Nevada

(O) 1947A

Statutory interpretation is a question of law that this court reviews de novo. *Gallagher v. City of Las Vegas*, 114 Nev. 595, 599, 959 P.2d 519, 521 (1998). This court has established that when the language of a statute is unambiguous, the courts are not permitted to look beyond the statute itself when determining its meaning. *See Banegas v. State Indus. Ins. Sys.*, 117 Nev. 222, 225, 19 P.3d 245, 247 (2001). NRS 78.138 is unambiguous. The plain language of the statute is clear as to two vital contentions in this case: (1) the Board is "presumed to act in good faith, on an informed basis and with a view to the interests of the corporation," and (2) the Board can establish that it meets that presumption by relying on "reports" and "[c]ounsel," as long as the Board did not have "knowledge concerning the matter in question that would cause reliance thereon to be unwarranted." NRS 78.138(2)-(3). Nothing in the statute's plain language indicates that in meeting the requirements of Nevada's business judgment rule as codified in NRS 78.138, the Board waives attorney-client privilege. Rather, Wynn Resorts is entitled to the presumption that it acted in good faith, such as by receiving outside counsel in reaching a decision.

NRS 78.138(2) is consistent with principles from the American Law Institute. *See* 1 *Principles of Corporate Governance* § 4.01 (Am. Law Inst. 1992). In comment (c) to Section 4.01(c), the commentators suggest that "[r]eliance on written reports, opinions, and statements of officers and employees of the corporation (and of other persons) will, of course, often be both necessary and desirable." Further, "[t]he great weight of case law and commentator authority supports the proposition that an informed decision (made, for example, on the basis of explanatory information presented to the board) is a prerequisite to the legal insulation afforded by the business judgment rule." *Id.* at cmt. e.

Several Delaware cases further support our conclusion that a party is not required to waive the attorney-client privilege as the price for receiving the protection of the business judgment rule. *See, e.g., Minn. Invco of RSA # 7, Inc. v. Midwest Wireless Holdings LLC*, 903 A.2d 786, 797-98 (Del. Ch. 2006) (holding no waiver of privilege; "evidence at trial shows that each [director] approved the [action], upon the advice of counsel . . . . Therefore, the court concludes that the board members were fully informed and acted in the best interest of [the company]"); *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 778 (Del. Ch. 2005) (holding no waiver of privilege; "[the chief executive officer] weighed the alternatives, received advice from counsel and then exercised his business judgment in the manner he thought best for the corporation"); *In re Comverge, Inc. Shareholders Litig.*, No. 7368-VCP, 2013 WL 1455827 at *3 (Del. Ch. April 10, 2013) (holding no waiver of privilege; "the examination of privileged communications is not required . . . because the . . . [d]efendants merely seek to rely on the fact that they sought and obtained legal advice rather than that they relied on the substance of privileged communications to prove that the Board was fully informed").

We agree that "it is the existence of legal advice that is material to the question of whether the board acted with due care, not the substance of that advice." *In re Comverge, Inc.*, 2013 WL 1455827, at *4. Accordingly, the district court erred when it compelled Wynn Resorts to produce any attorney-client privileged Brownstein Hyatt documents on the basis that Wynn Resorts waived the attorney-client privilege of those documents by claiming the business judgment rule as a defense. *See WLR Foods*, 857 F. Supp. at 494. Thus, we grant Wynn Resorts' petition for writ relief in Docket No. 70050 and instruct the district court to vacate the

order compelling the production of any attorney-client privileged Brownstein Hyatt documents.

*Wynn Resorts waived attorney-client privilege by placing the Freeh Report at issue in the initial litigation (Docket No. 70452)*

The at-issue waiver doctrine applies where the client has placed at issue the substance or content of a privileged communication. *See Wardleigh*, 111 Nev. at 354, 891 P.2d at 1186 (discussing the doctrine in terms of whether the client has placed "at-issue the *subject matter* of privileged material" or "seeks an advantage in litigation by *revealing part of a privileged communication*" (emphasis added) (internal quotation marks omitted)); *see also Rockwell Int'l Corp. v. Superior Court*, 32 Cal. Rptr. 2d 153, 161 (Ct. App. 1994) (explaining that the doctrine applies "*only* when the client tenders an issue involving *the substance or content* of a protected communication" (second emphasis added)). Courts have held that "advice of counsel is placed [at-]issue where the client asserts a claim or defense, and attempts to prove that claim or defense by *disclosing* or *describing* an attorney client communication." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (emphasis added); *but see Roehrs v. Minn. Life Ins. Co.*, 228 F.R.D. 642, 646 (D. Ariz. 2005) (deciding that the attorney-client privilege was waived when claims adjusters testified in deposition that they "considered and relied upon, among other things, the legal opinions or legal investigation" in decision-making). However, "[a] denial of bad faith or an assertion of good faith alone is not an implied waiver of the privilege." *Bertelsen v. Allstate Ins. Co.*, 796 N.W. 2d 685, 703 (S.D. 2011). "[A] client only waives the [attorney-client] privilege by expressly or impliedly injecting his attorney's advice into the case." *Id.*

 

If the substance of one privileged document is disclosed, the privilege is considered waived as to all documents relating to that subject matter. *See Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 883-84 (1st Cir. 1995); *Wardleigh*, 111 Nev. at 354-55, 891 P.2d at 1186. However, testimony that the communications occurred, without disclosing the subject matter, does not render the privilege waived. *See Lisle v. State*, 113 Nev. 679, 701, 941 P.2d 459, 474 (1997), *overruled on other grounds by Middleton v. State*, 114 Nev. 1089, 1117 n.9, 968 P.2d 296, 315 n.9 (1998); *see also United States v. O'Malley*, 786 F.2d 786, 794 (7th Cir. 1986) ("[A] client does not waive his attorney-client privilege 'merely by disclosing a subject which he had discussed with his attorney'"; rather, "[i]n order to waive the privilege, the client must disclose the communication with the attorney itself.").

Wynn Resorts argues that the documents created during the Freeh Group's investigation that the Board never saw are irrelevant to the issues to be adjudicated because it is only utilizing the Freeh Report to successfully overcome a potential challenge of the Board's decision under the business judgment rule, and their reliance on the Freeh Report is for the limited purpose of establishing what the directors knew and what they considered.

The Okada Parties counter that when Wynn Resorts chose to share the Freeh Report, but not the underlying documents, Wynn Resorts was seeking to use the privilege as both a sword and a shield. The Okada Parties cite several persuasive cases for their proposition that "[i]n the particular context of internal investigations, . . . disclosure of the results of an investigation results in a subject matter waiver of all related evidence." *See, e.g., In re Martin Marietta Corp.*, 856 F.2d 619, 623-24 (4th Cir. 1988)

SUPREME COURT
OF
NEVADA

(O) 1947A

20

(finding waiver of privilege and rejecting the limited waiver concept where company submitted a position paper to a government agency, and allowing discovery of the position paper and underlying details); *see also In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 472-73 (S.D.N.Y. 1996) (finding waiver where company submitted investigative report to the SEC, as well as in litigation, using "the substance of the documents as a sword while at the same time invoking the privilege as a shield to prevent disclosure of the very materials that it has repeatedly invited the courts to rely upon").

In an analogous case, *In re OM Securities Litigation*, 226 F.R.D. 579 (N.D. Ohio 2005), outside counsel gave a PowerPoint presentation regarding an investigative report to the company's audit committee. *Id.* at 590. The plaintiff asked for discovery of all the documents underlying the report and the investigation, and the defendants claimed attorney-client privilege. *Id.* at 584. After the defendants produced the PowerPoint presentation and two related spreadsheets, but did "not produce[ ] any of the underlying documents relating to, referred to, or relied upon, in the presentation," the plaintiffs argued that the "[d]efendants waived any privilege over the documents containing the same subject matter as the presentation." *Id.* at 590. The defendants countered "that the privilege in documents underlying the Power Point presentation was not waived because the report merely summarized findings and conclusions and did not disclose a 'significant part' of the investigation." *Id.* The court disagreed with the defendants and gave examples of the significant disclosures, noting that

> it described the reason for the . . . [investigation],
> directly quoted concerns and observations . . . set
> forth in e-mails by identified individuals,

SUPREME COURT
OF
NEVADA

(O) 1947A

> summarized the content of specific e-mails, identified more than ten persons interviewed in connection with the investigation, . . . and set forth investigative results.

*Id.* at 592. The court held that the "disclosure of the presentation would make it unfair to protect the documents underlying the presentation" because the disclosure was "substantial, intentional, and deliberate." *Id.* at 593. Because there "was a detailed formal, oral presentation relying upon specific information," the court found that

> [t]he underlying documents clearly [were] within the scope and subject matter of the . . . intentional disclosure. There [was] no reason [d]efendants, who voluntarily disclosed substantial information about an investigation that led to a public announcement . . . should now be able to withhold information that would allow [p]laintiff to review the whole picture.

*Id.* Therefore, the plaintiff was granted discovery for "all documents in existence at the time of the . . . presentation" that related to, or were underlying, the presentation by counsel. *Id.*

Wynn Resorts disclosed the Freeh Report by voluntarily and intentionally placing protected information into the litigation. Wynn Resorts voluntarily filed its complaint, seeking to have the court affirm its business decision and, in doing so, attached a copy of the Freeh Report. Like the disclosed presentation in *In re OM*, the disclosed Freeh Report describes the reason for the investigation, directly quotes concerns and observations, summarizes the content of emails from identified individuals, identifies persons interviewed, and sets forth investigative results. Further, not only did Wynn Resorts provide this specific information to the court and regulatory agency, but, like in *In re OM*, the

disclosure led to a public announcement when Wynn Resorts allegedly disclosed the Freeh Report to the press.

Therefore, we conclude that the district court did not err in finding that Wynn Resorts waived the attorney-client privilege in regard to the Freeh Report and the documentation compiled in the preparation of the Report. However, disclosure of some of the underlying Freeh Report documents may be protected by the work-product privilege.

*Freeh Report documents and work-product protection (Docket No. 70452)*

The work-product doctrine protects more than just communications between a client and attorney, and is thus broader than the attorney-client privilege. *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). Thus, an attorney's work product, which includes "mental impressions, conclusions, opinions, and legal theories of counsel . . . , are not discoverable under any circumstances." *Wardleigh*, 111 Nev. at 359, 891 P.2d at 1189; NRCP 26(b)(3).

Both the attorney and client have the power to invoke the work-product privilege. Restatement (Third) of the Law Governing Lawyers § 90 (2000). Nevada's work-product privilege is found at NRCP 26(b)(3), which provides, in relevant part:

> [A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation . . . by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials . . . and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by

other means. In ordering discovery of such materials when the required showing has been made, *the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.*

(Emphasis added.) Therefore, like its federal counterpart, FRCP 26(b)(3), NRCP 26(b)(3) protects documents with "two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.) (Torf)*, 357 F.3d 900, 907 (9th Cir. 2004) (internal quotation marks omitted).

In determining whether materials were prepared in anticipation of litigation, courts generally use one of two tests: (1) the "primary purpose" test[6] or (2) the "because of" test. We take this opportunity to join a majority of courts and adopt the "because of" test for

---

[6]*See Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004) ("[A] document is entitled to work product protection if the primary motivating purpose behind the creation of the document was to aid in possible future litigation."); *Blockbuster Entm't Corp. v. McComb Video, Inc.*, 145 F.R.D. 402, 404 (M.D. La. 1992) ("[T]he general rule is that litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation."); *Ex parte Cryer*, 814 So. 2d 239, 247 (Ala. 2001) ("[T]he primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation."); *Squealer Feeds & Liberty Mut. Ins. Co. v. Pickering*, 530 N.W.2d 678, 687 (Iowa 1995) ("[I]f the 'primary motivating purpose' in preparing the documents is to 'aid in possible future litigation,' the documents are prepared in anticipation of litigation." (quoting *Ashmead v. Harris*, 336 N.W.2d 197, 201 (Iowa 1983)), *abrogated by Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38 (2004).

determining whether work was done "in anticipation of litigation." NRCP 26(b)(3). *See, e.g., Torf*, 357 F.3d at 907-08; *Maine v. U.S. Dep't of the Interior*, 298 F.3d 60, 68 (1st Cir. 2002); *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987); *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987); *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983); *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979).

Under the "because of" test, documents are prepared in anticipation of litigation when "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." Restatement (Third) of the Law Governing Lawyers § 87 cmt. i (2000) (quoting 8 Charles A. Wright et al., Federal Practice & Procedure § 2024, at 343 (2d ed. 1994) (emphasis added)). The Restatement approach is consistent with Nevada caselaw examining work product and protecting records prepared by or at the request of an attorney, but not records prepared in the normal course of business since those are not prepared because of the prospect of litigation. *See, e.g., Columbia/HCA Healthcare Corp. v. Eighth Judicial Dist. Court*, 113 Nev. 521, 527-28, 936 P.2d 844, 848 (1997) (concluding that hospital's "occurrence reports" were not protected work product because they were prepared in the normal course of business).

The anticipation of litigation must be the *sine qua non* for the creation of the document—"but for the prospect of that litigation," the document would not exist. *Torf*, 357 F.3d 900, at 908 (quoting *Adlman*, 134 F.3d at 1195). However, "a document . . . does not lose protection

SUPREME COURT
OF
NEVADA

(O) 1947A

under this formulation merely because it is created in order to assist with a business decision." *Adlman*, 134 F.3d at 1202. "Conversely . . . [this rule] withholds protection from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Id.*

In determining whether the "because of" test is met, we join other jurisdictions in adopting a "totality of the circumstances" standard. *See, e.g., Torf*, 357 F.3d at 908; *In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI(EMC), 2006 WL 1699536, at *4 (N.D. Cal. June 16, 2006). In *Torf*, the Ninth Circuit Court of Appeals stated that

> [t]he "because of" standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]"

357 F.3d at 908 (second alteration in original) (quoting *Adlman*, 134 F.3d at 1195).

In evaluating the totality of the circumstances, the court should "look[ ] to the context of the communication and content of the document to determine whether a request for legal advice is *in fact* fairly implied, taking into account the facts surrounding the creation of the document and the nature of the document." *In re CV Therapeutics*, 2006 WL 1699536, at *4. Lastly, the court should consider "whether a communication explicitly sought advice and comment." *Id.*

It is unclear in the case before us whether the district court utilized the "because of" test for determining if the Freeh Report was

 

prepared in anticipation of litigation. Therefore, we direct the district court to consider whether the Freeh Report was created "in anticipation of litigation" under the "because of" test, applying a "totality of the circumstances" analysis.[7]

*Waiver of the work-product privilege*

Unlike the attorney-client privilege, selective disclosure of work product to some, but not to others, is permitted. *See* 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2024, at 530 (3d ed. 2010); *see also, In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir 1982) ("[B]ecause [the work-product doctrine] looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, the work product privilege is not automatically waived by any disclosure to a third party."); *United States ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 25 (D.D.C. 2002) ("[A] party does not automatically waive the work-product privilege by disclosure to a third party."); *Medinol, Ltd. v. Bos. Scientific Corp.*, 214 F.R.D. 113, 114 (S.D.N.Y. 2002) ("Unlike the attorney-client privilege, . . . work product protection is not necessarily waived by disclosures to third persons."). Waiver of the protection is, however, usually found when the material is disclosed to an adversary. *See, e.g., Meoli v. Am. Med. Serv. of San Diego*,

---

[7]The district court order required production of documents compiled in the preparation of the Freeh Report. However, this ruling was made after a review of 25 percent of the documents submitted to the court *in camera*. If the district court concludes that the Freeh Report was created in anticipation of litigation, it must undertake a complete examination of the underlying documents to determine whether those documents are separately protected under the work-product privilege.

SUPREME COURT
OF
NEVADA

(O) 1947A

287 B.R. 808, 817 (S.D. Cal. 2003) ("Voluntary disclosure of attorney work product to an adversary in the litigation defeats the policy underlying the privilege."); 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2024, at 532 (3d ed. 2010) (stating that disclosure to third parties does not waive work-product protection except when "it has substantially increased the opportunities for potential adversaries to obtain the information").

The Okada Parties argue that any work-product protection of the Freeh Report documents has been waived. However, the district court order compelling disclosure of the Freeh Report documents was not based on a waiver theory; rather, it was based on a finding that the investigation was not done in anticipation of litigation. We do not consider the Okada Parties' waiver argument at this time because it would require this court to engage in fact-finding, a task more appropriately reserved for the district courts. *See Ryan's Express Transp. Servs., Inc. v. Amador Stage Lines, Inc.*, 128 Nev. 289, 299, 279 P.3d 166, 172 (2012) ("An appellate court is not particularly well-suited to make factual determinations in the first instance." (citing *Zugel v. Miller*, 99 Nev. 100, 101, 659 P.2d 296, 297 (1983))).

## CONCLUSION

In Docket No. 70050, we conclude that the district court erred when it compelled Wynn Resorts to produce certain attorney-client privileged documents from its attorneys with the law firm Brownstein Hyatt on the basis that Wynn Resorts invoked the business judgment rule. Therefore, we grant Wynn Resorts' petition for writ relief in Docket No. 70050 and direct the clerk of this court to issue a writ of prohibition precluding the district court from compelling the production of the attorney-client privileged Brownstein Hyatt documents.

SUPREME COURT
OF
NEVADA

(O) 1947A

28

In Docket No. 70452, we conclude that the district court correctly determined that Wynn Resorts waived the attorney-client privilege by placing the Freeh Report at issue in the initial litigation. However, because the work-product privilege may apply to some of the documents compiled in the preparation of the Freeh Report, we grant the petition in part and direct the clerk of this court to issue a writ of prohibition directing the district court to consider, consistent with this opinion, whether the work-product privilege applies.

_____, J.
Hardesty

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Stiglich